UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KISHA JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 3838 |
| v. ) | |
| ) | Judge John W. Darrah |
| CENTURION CAPITAL CORPORATION; and ) | |
| BLATT, HASENMILLER, ) | |
| LEIBSKER & MOORE, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants, Centurion Capital Corporation ("Centurion") and Blatt, Hasenmiller, Leibsker & Moore, LLC ("BHLM"), brought suit in Illinois state court against Plaintiff, Kisha Jenkins, to collect on a debt allegedly owed by Jenkins. After that suit was dismissed, Plaintiff brought suit in this Court under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that Defendants' suit in state court violated that act. Before the Court are the parties' cross-motions for summary judgment.

## BACKGROUND

Jenkins is a citizen of the State of Illinois. (Defs.' 56.1(a)(3), at ¶ 1.) Defendant Centurion is a Maryland corporation. (Defs.' 56.1(a)(3), at ¶ 2.) Defendant BHLM is an Illinois limited liability company and a law firm. (Defs.' 56.1(a)(3), at ¶ 3.)

Jenkins opened a Newport News credit card account in 2000. (Pl.'s 56.1(a)(3), at ¶ 7.) The card was issued by First Consumers National Bank ("FCNB"). (Pl.'s 56.1(a)(3), at ¶ 3.) Jenkins closed the account in 2002 because she could not afford to make the monthly payments. (Pl.'s 56.1(a)(3), at ¶ 7.) Jenkins' account was charged off on September 12, 2002. (Pl.'s

56.1(a)(3), at ¶ 8.) At some unknown point in time, Capital One bought Jenkins' delinquent Newport News debt either directly from FCNB or through one or more intermediate owners. (Pl.'s 56.1(a)(3), at ¶ 8.) On December 8, 2005, Capital One sold Jenkins' delinquent Newport News debt to Centurion. (Pl.'s 56.1(a)(3), at ¶ 9.)

On December 9, 2005, Centurion assigned Jenkins' Newport News debt to the law firm of Wolpoff & Abramson to attempt to collect the debt. (Pl.'s 56.1(a)(3), at ¶ 13.) After those efforts proved unsuccessful, Wolpoff & Abramson sent Jenkins' debt to BHLM for further collection efforts. (Pl.'s 56.1(a)(3), at ¶ 14.)

On August 23, 2006, BHLM filed a lawsuit against Jenkins on behalf of Centurion in Cook County, Illinois (the "State Court Lawsuit"), seeking $2,109.37 plus costs. (Pl.'s 56.1(a)(3), at ¶ 15; Defs.' 56.1(a)(3), at ¶ 10.) On February 26, 2007, Jenkins filed her *pro se* appearance in the State Court Lawsuit, and a hearing date was set for March 13, 2007. (Defs.' 56.1(a)(3), at ¶ 12.) At the March 13, 2007 hearing, the court set the matter for a further status on May 15, 2007. (Defs.' 56.1(a)(3), at ¶ 13.)

In early February, 2007, Centurion sold Jenkins' account to Palisades Acquisition XVI, LLC ("Palisades"). (Pl.'s 56.1(a)(3), at ¶ 40.) On March 29, 2007, BHLM sent Jenkins a letter, advising her of the sale. (Defs.' 56.1(a)(3), at ¶ 14.) On April 4, 2007, Jenkins' attorney sent BHLM a letter, pointing out that Centurion lacked standing to maintain the suit because the debt had been sold to Palisades and demanding that Centurion dismiss the State Court Lawsuit within seven days. (Defs.' 56.1(a)(3), at ¶ 15; Pl.'s 56.1(a)(3), at ¶¶ 41, 42.) On May 15, 2007, BHLM voluntarily dismissed the State Court Lawsuit with prejudice. (Pl.'s 56.1(a)(3), at ¶ 43; Defs.' 56.1(a)(3), at ¶ 19.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

**ANALYSIS**

Count I of Plaintiff's Complaint alleges that Defendants violated section 1692e of the FDCPA, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1962e. Count II alleges that Defendants violated section 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Defendants have not disputed that they are debt collectors as defined by the FDCPA. Thus, the only question remaining is whether Defendants' actions violated sections 1692e or 1692f of the FDCPA. Plaintiff alleges numerous violations, each of which will be addressed in turn.

The basis of Plaintiff's Complaint is that Defendants violated sections 1692e and 1692f of the FDCPA by bringing the State Court Lawsuit against Plaintiff, even though Defendants knew at the time that they would be unable to prove the allegations of that suit. As Plaintiff points out, the only supporting documentation Defendants attached to their complaint in the State Court Lawsuit was the affidavit of Beverly Berry, a Centurion employee. In her affidavit, Berry made certain statements regarding Centurion's record-keeping practices and her knowledge of those practices. Berry also stated that Plaintiff owed "$2,109.37 together with interest and other applicable costs."

In her motion for summary judgment, Plaintiff challenges Berry's affidavit in an attempt to demonstrate that it both contains false statements and was insufficient to carry Defendants' burden at trial in the State Court Lawsuit. Relying on Berry's deposition testimony, Plaintiff demonstrates Berry's lack of knowledge regarding the record-keeping systems of the previous

4

owner of the debt, FCNB/Newport News and Capital One. Plaintiff points out that Berry would sign hundreds of similar affidavits on an average day, did not know who prepared the affidavits she signed or what records that person used to insert the information concerning Plaintiff's account into the affidavit she signed. Furthermore, Plaintiff argues, Berry's affidavit was inadmissible in the state-court proceedings and, thus, could not be used to prove the existence of the debt.

Plaintiff's attacks on the Berry affidavit is unpersuasive. With one possible exception, discussed below, Plaintiff has not specifically identified any false statements in the Berry affidavit. Berry did not purport to be familiar with the record-keeping systems of FCNB/Newport News or Capital One. Nor did she claim familiarity with Plaintiff's account. Instead, the thrust of the affidavit is that Centurion keeps accurate records of the debt it acquires and that based on those records, Plaintiff owed $2,109.37. Plaintiff's argument that the Berry affidavit was inadmissible and insufficient to prove Defendant's allegations also misses the point. The Seventh Circuit has suggested that the FDCPA does not control pleading requirements in state court; rather, that matter is left to the discretion of the state court. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007) (*Beler*) (noting the court's previous suggestion that state's rules of procedure, not federal law, determine the pleading requirements); *Krawczyk v. Centurion Capital Corp.*, 2009 WL 395458 (N.D. Ill. February 18, 2009) ("[*Beler*] suggests that a judgment about the quality of the pleadings and evidence submitted in state court should be left to the discretion of the state court judge."). Thus, Defendants' failure to attach further documentation, beyond the Berry affidavit, to the complaint does not violate the FDCPA.

While admitting courts have held that bringing a collection case without immediate means of proving the debt does not violate the FDCPA, Plaintiff attempts to distinguish this case by alleging that, here, Defendants knew when they brought suit that they would never be able to prove Plaintiff owed the alleged debt. Plaintiff points to various clauses in the agreement by which Centurion purchased the debt that restrict Centurion from requesting further documentation regarding Plaintiff's debt from Capital One. Thus, Plaintiff asserts, Defendants knew when they initiated the State Court Lawsuit that they would never be able to offer any proof that Plaintiff owed the debt.

As Defendants point out, however, the issue before this Court is not whether Defendants could have ultimately prevailed in the State Court Lawsuit against Plaintiff. Rather, the issue is whether Defendants had a good faith basis to file that suit. Considering the undisputed facts before the Court, it is clear that they did. Plaintiff does not dispute that some portion of her account balance from her FNBC/Newport News credit card remained unpaid at the time she closed the account. (Pl. Dep., at 42.) She does not dispute that Centurion purchased that debt from Capital One. (Pl. Resp. to Defs.' 56.1(a)(3), at ¶ 6.) Thus, Plaintiff admits that the State Court Lawsuit was brought in an attempt to collect a debt she actually owed.

Plaintiff admits she does not know what the correct amount was but insists that Defendants cannot prove the correct amount either. This argument confuses proofs and pleadings: Capital One provided Centurion with the unpaid balance on Plaintiff's account, thus providing a basis for Centurion's good faith belief as to the amount owed.[1] Thus, Plaintiff's

---

[1] Plaintiff attempts to dispute that Capital One informed Centurion of the amount owed by pointing out that the agreement covering the sale of the debt from Capital One to Centurion states that the "Sale File" – the file setting forth certain information regarding Plaintiff's account – provides that information only to the extent it was available to Capital One. The

argument comes down to the position that a lawsuit brought in good faith to collect a debt that was actually owed was a violation of the FDCPA. Plaintiff has failed to explain how such a suit is either false, deceptive, misleading or unfair.[2]

Plaintiff next argues that Defendants made several false statements within the lawsuit that are actionable under 1692e. First, Plaintiff points to the statement in the Berry affidavit, attached to the State Court Lawsuit complaint, which states that the amount owed was "$2,109.37 together with interest and other applicable costs." Plaintiff claims that because Centurion had no basis to seek interest, this statement was false.

Defendants respond, first, that when the State Court Lawsuit complaint is read as a whole, it is clear that Centurion was not claiming interest; second, that even if the statement is technically false, it does not violate the FDCPA because it would not mislead an unsophisticated consumer; and, finally, that the statement is not false because Centurion, though it did not seek it in state court, was entitled to interest on the debt under the credit card agreement.

---

information to be provided in the sale file includes the original creditor's account number, address, social security number and telephone numbers, the date of charge-off, the date of the first delinquency, the last payment date and the unpaid balance. Apparently, Plaintiff means to suggest that the information not available to Capital One included the unpaid balance or, in other words, the amount of debt being sold under the agreement. The Court declines to follow Plaintiff in this inference.

[2] Plaintiff argues that Defendants knew that "they would *never* have *any* admissible evidence to prove the debt." (Pl.'s reply Br., at 6.) However, if there were a trial in state court to collect the debt, it would seem that Plaintiff could be called as an adverse witness and establish that she opened the account, used the card and failed to pay the entire balance. This would appear to be competent evidence to prove the existence of the debt. At her deposition, Plaintiff was asked, "And you didn't pay your entire debt to Newport News, did you?" Plaintiff answered, "No." (Pl. Dep., at 42.) Furthermore, it is far from certain that the information received by Centurion from Capital One would have been ruled inadmissible or that Centurion would have been unable to acquire further documentation from earlier creditors through legal process. This is precisely the kind of evidentiary dispute that is best left to the state court, applying Illinois rules of evidence to decide.

To be actionable under section 1692e of the FDCPA, a statement must be misleading to the unsophisticated consumer. *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) (*Wahl*). "The purpose of the [FDCPA] is to protect consumers, and they don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision." *Muha v. Encore Receivable Management, Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). Here, the allegedly false statement, that Plaintiff owed $2,109.37 plus interest, was contained in the Berry affidavit, which was attached to the State Court Lawsuit complaint. However, the complaint itself makes no mention of interest; it simply asks for a judgment of $2,109.37, plus costs. There is a fair distinction between what Plaintiff allegedly owed Centurion and what Centurion was demanding in the State Court Lawsuit. The former is stated in the affidavit, and the latter in the complaint. Plaintiff has not sufficiently demonstrated how the unsophisticated consumer would be misled by the statement in the affidavit.

Furthermore, there is, at a minimum, a disputed factual issue as to whether Centurion was actually entitled to interest and, therefore, whether the statement was false. Among the information received by Centurion from Capital One was a FCNB Credit Card Account Agreement, which Centurion believes governed Plaintiff's account with FCNB. That agreement provides that finance charges continue to accrue on any unpaid balance. This suggests that Centurion was entitled to interest on the debt. In any case, Plaintiff has offered no evidence to show that the agreement did not govern Plaintiff's account or that Centurion was not entitled to interest. For the foregoing reasons, Plaintiff is unable to meet its burden of showing that the statement in the Berry affidavit that Plaintiff owed interest was either false or misleading. Therefore, summary judgment will be granted in favor of Defendants on this claim.

Plaintiff next asserts that the statement in the complaint that Centurion was "a corporation authorized to do business in the State of Illinois" is false and actionable under § 1692e. Plaintiff also asserts that Defendants violated § 1692f by bringing the State Court Lawsuit because Centurion was not authorized to do business in Illinois. Under Illinois law, a foreign corporation transacting business in the state must obtain authority to do so before bringing a civil action in any Illinois court. *See* 805 ILCS 5/13.70(a). However, an exception exists for corporations "engaged in only occasional and isolated transactions in Illinois," which are not required to obtain a certificate of authority. *Subway Restaurants, Inc. v. Riggs*, 297 Ill.App.3d 284, 289 (1 Dist. 1998).

Plaintiff argues that Centurion does not fall within the exception for corporations whose business consists solely of occasional or isolated transactions because Centurion has supposedly brought over three-thousand lawsuits in Cook County alone since 2006. However, under Illinois law, maintaining, defending or settling any proceeding is not considered to be conducting business. *See* 805 ILCS 5/13.75. Thus, bringing the State Court Lawsuit did not violate § 1692f, and claiming to be authorized to do business in Illinois did not violate § 1692e.[3]

Finally, Plaintiff argues that continuing the State Court Lawsuit past February, 2007, when Centurion sold her debt to Palisades, violated section 1692f. Plaintiff has cited no authority and has developed no argument supporting her position that the continuation of the

---

[3]Technically, the exact meaning of the statement that Centurion was "authorized to do business in the State of Illinois" could be debated. Defendants insist that Centurion was engaged in interstate commerce and therefore did not need to be registered with the state. Whether that is the same as being "authorized to do business" could be disputed. But other than arguing that Centurion was not authorized to bring suit, Plaintiff has not explained how this arguably technically false statement is material.

State Court Lawsuit violated the FDCPA. Absent any contrary authority or reasoning, Defendants' delay in voluntarily dismissing the State Court Lawsuit is an issue more appropriately left to the state court and not one giving rise to a federal cause of action.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted.

Dated: October 20, 2009

JOHN W. DARRAH
United States District Court Judge